# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RENEE NEWELL,

        Plaintiff,

v.                                                           Case No. 12-14928
                                                             Honorable Denise Page Hood

COUNTY OF WAYNE, RAY
JOHNSON, ALEX CHAHINE,
IRA TODD, BENNY NAPOLEON,
DENNIS RICHARDSON, and DON
FARRIS,

        Defendants.

_____/

## ORDER DENYING SUMMARY JUDGMENT MOTION FILED BY IRA TODD [Dkt. No. 120], DENYING SUMMARY JUDGMENT MOTION FILED BY DENNIS RICHARDSON [Dkt. No. 124], GRANTING REMAINING SUMMARYJUDGMENT MOTIONS [Dkt. Nos. 121, 122, and 123] and DENYING MOTION FOR ORDER [Dkt. No. 138]

## I.     INTRODUCTION

Plaintiff Renee Newell filed this 42 U.S.C. § 1983 action on November 5, 2012,

alleging that Defendants violated her constitutional rights when they obtained an

illegal search warrant from a state court magistrate pursuant to an application that

contained intentionally false statements and omissions.

On April 11, 2016, Defendant Ira Todd ("Todd") filed a Motion for Summary

1

Judgment. [Dkt. No. 120]  On April 15, 2016, Defendants Benny Napoleon ("Napoleon") and County of Wayne ("Wayne County") filed a Motion for Summary Judgment [Dkt. No. 121], Defendants Alex Chahine ("Chahine") and Ray Johnson ("Johnson") filed a Motion for Summary Judgment [Dkt. No. 122], Defendant Don Farris ("Farris") filed a Motion for Summary Judgment [Dkt. No. 123], and Defendant Dennis Richardson ("Richardson") filed a Motion for Summary Judgment. [Dkt. No. 124]  Plaintiff filed a response to the motions filed by Todd, Richardson, and Napoleon and Wayne County, and those Defendants have filed reply briefs.  Plaintiff did not file a response to the motions filed by Farris or Chahine and Johnson.  The Court held a hearing on the motions on July 27, 2016.  On August 4, 2016, a Motion for Order Regarding Exhibit 7 to Docket Number 131 was filed by Napoleon, Richardson and Wayne County. [Dkt. No. 138]

For the reasons that follow, the Court grants the summary judgment motions filed by Napoleon and Wayne County, Richardson, Chahine and Johnson, and Farris. As to Todd and Richardson, Plaintiff alleges and offers evidence that Todd included, and Richardson was aware of, several erroneous statements in the search warrant affidavit.  Whether such errors were simply negligent, reckless or intentional is a question for the trier of fact and the summary judgment motions filed by Todd and Richardson are denied.  The Court also denies the motion for order filed by Napoleon,

2

Richardson and Wayne County.

## II.     BACKGROUND

### A.     The Investigation

Plaintiff was employed by the Wayne County Sheriff's Department (the "Department") as the Jail Monitor/Internal Compliance Manager for the Wayne County Jail until she was fired on May 26, 2012.  According to Plaintiff, she was fired for blowing the whistle on wrong-doing with jail commissary funds and hiring; according to Defendants, she was fired for violating jail policy, engaging in misconduct, and lying during an internal affairs investigation.  About two  months after she was terminated, Plaintiff became the subject of an investigation into various communications made to Napoleon and others, some of which indicated that Eric Smith (who was then an executive in the Sheriff's Department) needed to be fired. Dkt. No. 129, Ex. 2, at 37.

On July 20, 2012 a defamatory e-mail, with a PDF attachment, was sent by a person identified under the fictitious name Tom_Truth falsely accusing the Sheriff's Executive Chief, Eric Smith of being arrested and charged by the U.S. attorney on federal drug offenses (the "Tom_Truth email"). Dkt. No. 124, Ex.1.  The email, which was sent to the private and county email addresses of Sheriff Napoleon and members of his command staff, stated the following:

3

> Enclosed you will find an authentic criminal docket of an open federal criminal case against your Executive Chief of the Wayne County Sheriff's Office, Eric V. Smith. In 1995, Smith was caught, arrested, and charged with being in the possession of cocaine with the intent to distribute. Being that you are affiliated with the Wayne County Sheriff's Office, I believe you should be made aware of this critical information about your Executive Chief. Note that a $50,000 unsecured bond was posted and the case froze, open. That can only happen with a large amount of money and superior connections. Nevertheless, the fact remains that Wayne County Sheriff's Executive Chief Eric V. Smith was caught with cocaine in his possession which he intended to distribute. Please feel free to verify the authenticity of the document.

Office of U. S. Attorney, 313-226-9100.

Todd maintains that whoever sent or assisted in sending the email had access to both county and personal email addresses of command staff and appointees. Dkt, No. 124, Ex. 2 at 99. The Tom_Truth email referenced a criminal docket sheet from PACER (*USA v. Smith*, Case No. 95-mj-80993) that was included as an attachment saved as a PDF. The docket showed Eric V. Smith as the defendant in a criminal prosecution by the United States Attorney for federal drug charges. Dkt. No. 124, at Ex. 1.

Soon after the Tom_Thumb email, Napoleon began to receive text messages to his personal cell phone that said that, unless Napoleon fired Eric Smith, his political career would be over. Dkt. No. 124, at Ex. 3.  When Napoleon began receiving the texts on July 23, 2012, the person sending the texts did not give any name. Investigators only became aware of the name "Michael Bowles" (later determined to be Sam Saleh) after Newell's home was searched. Dkt. No. 124, Ex. 2 at 158, 239; Ex. 5 at 110.  The texts, which came from cell phone number (248) 579-3263 stated the

4

following:

- *Your political career is at stake. You need to call for Erics resignation. Your voting block will not support you after the series of news releases...*" (Sent July 23, 2012)

- *We are allowing you to step forward without PAIN and SHAME. We are prepared for any resistance…*" (Sent July 23, 2012)

- *Wish you well BEFORE PRIMARY. By the way Eric and Art Blackwell had an interesting conversation that was picked up. We gave advance warning. You have been QUOTED via your text "I WILL GO DOWN WITH THE SHIP I sincerely hope you can defend ES fraudulent activities. (*Sent July 30, 2012)

- *Do self a favor Eric leaves save your career. FBI is on your office. This is why 7 News held off reporting. You do not want the skeletons out. Yes we have 20 years of your misconduct acts.* (Sent August 2, 2012.)

Dkt. No. 124, Ex. 3. At some point, Napoleon spoke on the phone with the person later known as Michael Bowles, and Napoleon told that person he knew that such person was responsible for the Tom-Truth email. Docket No. 129, Ex. 7. Napoleon ordered an investigation shortly after receiving the first two texts and the Tom_Truth email. Dkt. No. 124, Ex. 4 at 37-38. The investigation was unusual in that it was directly ordered by Napoleon. Dkt. No. 129, Ex. 1 at 30-31.

Richardson, the Deputy Chief, oversaw the investigation, and he received and reviewed reports and directed activities. Dkt. No. 129, Ex. 1, at 25-26, 29, 35; Ex. 3 at 27, 29, 34, 36, 39-40; Ex. 4 at p. 63. The investigation was kept confidential—even within the Department and its Internet Crimes Unit ("ICU"). Dkt. No. 129, Ex. 3 at

5

34; Ex. 5 at 13).  Todd, a Detroit Police Department officer on special assignment to the Department, was the officer in charge of the investigation, and he reported directly to Richardson.  Dkt. No. 129, Ex. 3 at 36; Ex. 1 at 163, 166; Ex. 12 at 42).  Richardson contacted the ICU and asked Sgt. William Liczbinski ("Liczbinski"), supervising officer of the ICU, to review the Tom_Truth email and determine whether he could identify who sent it.  Dkt. No. 129, Ex. 1 at 48; Dkt. No. 124, Ex. 6 at 28.

Liczbinski told Richardson that he could not determine who authored or sent the email because it was sent through a TOR server, which anonymizes emails.  Dkt. No. 129, Ex. 4 at 28-31, 34, 37-46, 51-54, 69-75.  According to Liczbinski, it was virtually impossible to find out the identity of a person sending email through a TOR network because the message would travel through a channel of hundreds of thousands of computers all over the world, bouncing from server to server, becoming encrypted and re-encrypted until finally it would randomly be delivered through an exit node.  Dkt. No. 124, Ex. 6 at 43-44.  Liczbinski also opened the PDF and examined the properties of the document that accompanied the Tom_Truth email.  The name "Renee Newell" was listed as "author."  Dkt. No. 124, Ex. 6 at 30, 49; Ex. 7.  Liczbinski testified that Plaintiff's name appearing as "author" on the PDF meant that "the document was authored on a computer that was registered to a Renee Newell" or "it was authored on a computer where the software was registered to a Renee Newell."

6

Dkt. No. 124, Ex. 6 at 69-70.  Although Liczbinski did not think that  proved that Renee Newell was in fact the author, he agreed that it gave "some indication of the author or the possible author." *Id.* at 30.  Liczbinski was not an actual investigator on the case, nor was he the affiant on the search warrant, and he was not aware of all of the facts and details of the investigation. *Id.* at 76.  Richardson told Liczbinski to keep all the information secret and not tell anyone. Dkt. No. 129, Ex. 4, at 51-54, 63. Liczbinski complied and never told anyone else about his findings, including Todd. *Id.* at 63.

Richardson then contacted Johnson, a corporal in the ICU, and they met in Eric Smith's office. Johnson told Richardson and Eric Smith that he could not determine the source of the email because it was sent through a TOR server. Dkt. No. 129, Ex. 3 at 27.  Johnson made a copy of the text messages between Napoleon and "Michael Bowles," and Johnson provided a report and a disk of the text messages to Richardson. *Id.* at 29.  Richardson then talked with Todd about details of the ICU investigation and the threatening text messages Napoleon had received. Dkt. No. 129, at 74-75, 100.

## B.    The Search Warrant

Todd signed the search warrant for Plaintiff's house and the supporting affidavit after review and input from Defendants. Dkt. No. 129, Ex. 12 at 69, 110.

7

Although the IP address came back as anonymous, Todd thought the appearance of Newell's name on the PDF was significant, stating: "That's not a common name, you know, and so I concluded it was the same Renee Newell." Dkt. No. 124, Ex. 2 at 165-66.  A data search revealed that Plaintiff was the only Renee Newell in Detroit. *Id* at 285.   Todd also reviewed a letter that Plaintiff wrote to Napoleon prior to her termination, wherein she claimed she had been set up. Dkt. No. 124, Ex. 11 at 1-3. In the letter, Plaintiff blamed several members of the Department's executive staff, stating that they were out to get her.  She also was highly critical of Eric Smith, telling Napoleon that Eric Smith viewed himself as the real boss of the Wayne County Jail and that Eric Smith would "straighten things out" if Napoleon ever tried to challenge him. *Id.* at 13.

Todd reviewed an email from Plaintiff expressing contempt for Eric Smith and others, in which she stated:

> Surely after all this stuff I've been through, the last thing I need is to be * * * thrown on the ground, belly slammed, handcuffed and arrested. Although I'm sure that would make Owen, Heard, Smith and Pfannes's day, maybe a couple of others.

Dkt. No. 124, Ex. 12.  Based on this evidence, Todd thought there was sufficient evidence to believe that Newell was involved:

> I think she was pointing fingers at everybody, especially Eric Smith. She held them responsible so she was trying to dig up this dirt and these different lies on different people because she was upset and she wanted

8

revenge. And she had access to everybody's e-mail account, everybody's. Because it went out to a lot of executives so I mean who else would have had that kind of access from outside of the office. I believe she had access to that. The language in the -- I did read a document of a letter that she wrote to Benny Napoleon and to Captain Bulifant. The language was similar to the language in the e-mail that Tom Truth sent. There were a number of things that pointed me at Renee Newell at that time.

Dkt. No. 124, Ex. 2 at 288-90.

In the search affidavit prepared by Todd, he indicated that there was "probable cause to believe that Renee Newell fraudulently converted, transmitted, and/or created and authored a fictitious email address and attached documents…" Dkt. No. 124, Ex. 10. Todd stated: "I didn't need to know beyond a reasonable doubt. . .I just needed probable cause . . . I was trying to satisfy that probable cause standard." Dkt. No. 124, Ex. 2 at 286-87. In the search warrant affidavit, Todd swore that Plaintiff authored the attachment to the Smith email. Dkt. No. 129, Ex. 9; Ex. 12 at 78, 80-83, 88; Ex. 4 at 51-54, 75. As Todd testified at his deposition, Liczbinski had not said that; rather, Liczbinski told Todd that he could not tell if Plaintiff authored the attachment. Dkt. No. 129, Ex. 12 at 78, 80-83. In his affidavit, Todd stated, in part:

On 7-20-12, Sgt. William Liczbinski of the Internet Crimes Unit conducted an investigation into the origin of the email. Sgt. Liczbinski was able to determine that the email was sent using a TOR Server to disguise the email address. However, Sgt. Liczbinski was able to determine by examining the properties of the attached document that the document was authored and created by Plaintiff on 7-20-12 at 12:12:24 am and the emails were sent out at around 1:37am.

9

Dkt. No. 129, Ex. 9 at 3.

In addition to the statement about who "authored and created" the document attached to the email, that sentence also contains an error about when "the emails" were sent out. Dkt. No. 129, Ex. 10.  Based on the exhibits, it appears that only one email was sent out, and it was sent out at 1:37 p.m., not 1:37 a.m. Dkt. No. 129, Ex. 8; Ex. 10. Todd restates these errors later in his affidavit:

> Finally, Investigators were able to determine that the document authored by Plaintiff was created at 12:12:24 am and the email was sent at 1:37 am. Because of the late hours and the document being created in the middle of the night, it is reasonable to believe that the documents were created at Plaintiff's residence, located at 18627 Snowden, Detroit, MI.

Dkt. No. 129, Ex. 9 at 4.  Todd did not include any information in the search warrant affidavit about the person later learned to be "Michael Bowles" or the communications that person had with Napoleon, including Napoleon's belief that he knew the person later learned to be Bowles had sent the Tom_Truth email. Dkt. No. 129, Ex. 7.

Richardson reviewed the search warrant prior to submission to the prosecutor, and he did not correct the errors about Liczbinski stating that Plaintiff was the author or the time of the email, nor did he add any information about the texting and phone calls between the person later learned to be Michael Bowles and Napoleon. Dkt. No. 129, Ex. 1 at 47.  Napoleon states that he was advised of the search warrant before it

10

was executed, and although he had the authority to preclude the warrant or its execution, he did not do so. Dkt. No. 129, Ex. 2 at 54; Ex. 9.

When Todd submitted the warrant request to the Wayne County prosecutor, the first prosecutor declined to sign it but told the officers they could appeal his decision. Dkt. No. 129, Ex. 1 at 60; Ex. 14 at 6, 14-15, 23-24).  Richardson then went to Richard Hathaway ("Hathaway"), Chief Assistant Prosecutor for Wayne County, who was second in command at the office. Dkt. No. 129, Ex. 13 at 6.  Hathaway authorized the warrant. Dkt. No. 129, Ex. 12 at 119; Ex. 13 at 13). Todd then submitted the warrant application to a state court magistrate judge for approval, and it was signed and executed. Dkt. No. 129, Ex. 1 at 60.

The investigation against Plaintiff concluded when lead Wayne County Prosecutor Robert Donaldson refused additional search warrants, informed Napoleon that the Department had a conflict of interest in investigating Plaintiff, and advised Napoleon to turn over the investigation to the Michigan State Police ("MSP"). Dkt. No. 129, Ex. 1 at 68. The MSP has not investigated Plaintiff. Dkt. No. 129, Ex. 6 at 15-16.

## III.   APPLICABLE LAW & ANALYSIS

## A.   Rule 56

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant

11

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

**B.      Qualified Immunity**

As recently stated by the Supreme Court:

> The doctrine of qualified immunity shields officials from civil liability
> so long as their conduct does not violate clearly established statutory
> or constitutional rights of which a reasonable person would have
> known. A clearly established right is one that is sufficiently clear that
> every reasonable official would have understood that what he is doing
> violates that right. We do not require a case directly on point, but
> existing precedent must have placed the statutory or constitutional
> question beyond debate. Put simply, qualified immunity protects all
> but the plainly incompetent or those who knowingly violate the law.

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotation marks omitted).

Qualified immunity is a two-step process. *Saucier v. Katz*, 533 U.S. 194 (2001). First,

the Court determines whether, based upon the applicable law, the facts viewed in a

light most favorable to the plaintiff show that a constitutional violation has occurred.

Second, the Court considers whether the violation involved a clearly established

constitutional right of which a reasonable person would have known. *Saucier v. Katz,*

*supra*.; *Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005). Only if the undisputed facts,

or the evidence viewed in a light most favorable to the plaintiff fail to establish a

prima facie violation of clear constitutional law can this court find that the Defendants

are entitled to qualified immunity. *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).

Once a government official has raised the defense of qualified immunity, the

plaintiff "bears the ultimate burden of proof to show that the individual officers are

not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (citation omitted). A plaintiff must also establish that each individual defendant was "personally involved" in the specific constitutional violation. *See Salehphour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (unpublished) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants").

## C.   Fourth Amendment Law

To state a claim under the Fourth Amendment for an unconstitutional search, a plaintiff must establish one of two theories. First, a plaintiff can establish a violation if, despite the approval of the warrant by a magistrate, the four corners of "the warrant [are] so lacking in indicia of probable cause, that official belief in the existence of probably cause is unreasonable." *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989) (citing *Malley v. Briggs,* 475 U.S. 335 (1986)). Second, a plaintiff can demonstrate that, despite the approval of the warrant by a magistrate, an affiant intentionally sought to mislead the state court magistrate. *Hale v. Kart*, 396 F.3d 721, 726 (6th Cir. 2005). If a plaintiff can show that an affiant intended to mislead the magistrate, and that the state court magistrate relied upon that intentional misstatement to find probable cause, the federal court must decide whether the objective facts

14

known at the time of the approval of the warrant would have supported probable cause. *Id*. at 728. Police officers cannot use knowingly and/or recklessly false information to create probable cause. *Sykes v. Anderson*, 625 F.3d 294, 312  (6th Cir. 2010).  "Where only one reasonable reading of the facts is possible, *i.e.*, where the facts that relate to probable cause are not in dispute, the question of probable cause retains its legal character and should be decided by the judge." *Hale*, 396 F.3d at 728.

At the same time, "for purposes of section 1983 immunity, an officer is entitled to assume the validity of a search warrant secured by fellow officers." *Davison v. Frey*, 837 F. Supp. 235, 240 (E.D. Mich. 1993) (citations omitted); *Hansel v. Bisard*, 30 F. Supp. 2d 981, 986 (E.D. Mich. 1998) ("Reliance on a judicially secured warrant generally immunizes police officers from § 1983 actions predicated on Fourth Amendment violations").

## D.    Analysis

It is undisputed that Todd, Richardson and Napoleon "all knew about the IT investigation into the Smith email and its attachment." Dkt. No. 129, Ex. 1 at 47; Ex. 2 at 39, 43-45; Ex. 4 at 51-54. Plaintiff also argues that Todd, Richardson and Napoleon all knew about the extensive communications between Napoleon and "Michael Bowles" before the search warrant was obtained, Dkt. No. 129, Ex. 1 at 33, 125; Ex. 12 at 24-5, 97, 100-01.  As noted above, the record is devoid of any evidence

15

that any of them knew who "Michael Bowles" was prior to the application for and execution of the search warrant. Dkt. No. 124, Ex. 2 at 158, 239; Ex. 5 at 110.

Plaintiff also argues that Napoleon had personally spoken on the phone with "Michael Bowles" and knew that it was not Plaintiff who had threatened Napoleon in the Tom_Thumb email because the person later learned to be Michael Bowles had done so. Dkt. No. 129, Ex. 7; Ex. 2 at 51. Plaintiff asserts that Todd and Richardson also knew it was not Plaintiff who was threatening Napoleon. Dkt. No. 129, Ex. 1 at 35, 126; Ex. 12 at 91-93. Plaintiff notes that it is undisputed Todd and Richardson knew that the ICU investigators could not definitively determine the author of the email attachment or the computer on which it was generated. Dkt. No. 129, Ex. 1 at 51-54, 73-75; Ex. 12 at 78, 80-83).

*1.    Napoleon*

Plaintiff states, without support, that the evidence shows that Napoleon: (a) "directly" directed the investigation; (b) "implicitly authorized, approved or knowingly acquiesced" to "fabricated" information about Plaintiff being the author of the email attachment and the time the email was mailed; and (c) knew that significant exculpatory evidence was omitted from the affidavit Todd provided. Plaintiff suggests that this shows Napoleon participated in the fabrication of probable cause in the search warrant. Again, Plaintiff cites no evidence to support this.

16

There is no evidence that Napoleon was involved at any stage after <u>ordering</u> the investigation into the emails regarding Eric Smith. Dkt. No. 129, Ex. 2 at 37; Dkt. No. 121, Ex. 1 at 44; Ex. 7 at 29, 81; Ex. 8, at 28-32; Ex. 9, at 28-29, 37-40; Ex. 10, at 7, 10-11; Ex. 11 at 97, 111, 222, 243.  Todd testified that only Richardson and those on the search warrant team reviewed the search warrant before it was submitted. Dkt. No. 121, Ex. 11 at 251.  The evidence demonstrates that Napoleon did not review the search warrant itself, only that he acknowledged that he knew of the search warrant before it was executed and that he could have stopped its execution. Dkt. No. 129, Ex. 2, at 54.

> ### 2.   *Wayne County*

In asserting that there is a genuine dispute of material fact that Wayne County is liable, Plaintiff does not contend that Wayne County had an unconstitutional policy, practice, or custom concerning the procurement of search warrants.  Plaintiff instead argues that Napoleon is the final decision maker for Wayne County in law enforcement matters, and that he had sufficient involvement in obtaining the search warrant of Plaintiff's home, such that his actions create liability for Wayne County. Plaintiff relies on *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986), which provides, in part:

> The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

> Authority to make municipal policy may be . . . delegated by an official
> who possesses such authority, and of course, whether an official had
> final policymaking authority is a question of state law.

In Michigan, the county sheriff has final authority for law enforcement matters in the

county. *Leelanau Cty. Sheriff v. Kiessel*, 297 Mich.App. 285, 297-99 (2012).  Plaintiff

argues that, since Napoleon had final authority with respect to the issuance of search

warrants in Wayne County, and he exercised his oversight and was advised of the

search warrant prior to its execution, Wayne County has liability for the wrongful

search.

The evidence does not support Plaintiff's contentions.  Plaintiff does not cite

any authority for the proposition, nor does she allege, that Napoleon had an obligation

to review the search warrant for her home or any search warrant.  And, contrary to

Plaintiff's contention, as noted above, there is no evidence that Napoleon had any role

in determining that a search warrant should be pursued for Plaintiff's home, nor any

role in making the final decision with respect to authorizing officers to submit the

search warrant application to the Wayne County Prosecutor's Office.

3. *Todd*

a. *Section 1983 Claims*

Plaintiff argues that, with Richardson's and Napoleon's approval, Todd placed

multiple false statements in the search warrant affidavit and omitted exculpatory

18

evidence of which he was aware.  Plaintiff argues that the Court must review the affidavit for probable cause again once the false statements are omitted and the exculpatory evidence is included.  Plaintiff's arguments are based on *Sykes*, 625 F.3d at 305, where the court held:

> If the affidavit contains false statements or material omissions, we set aside the statements and include the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 . . . (1978)).

In order for the Court to treat false statements and material omissions in the foregoing manner, the Court must be cognizant that Plaintiff is:

> required to prove by a preponderance of the evidence that in order to procure the warrant, [the officer] "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood" and "such statements or omissions [we]re material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal quotation marks omitted); see *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (citing *Wilson* with approval and noting that in the § 1983 context "an officer or investigator cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant" (internal quotation marks and alteration omitted)); *Hinchman v. Moore*, 312 F.3d 198, 205-06 (6th Cir. 2002).

*Sykes*, 625 F.3d at 305 (emphasis added).

Plaintiff argues the following false statements are included in the search warrant affidavit prepared by Todd:

19

A.  However, Sgt. Liczibski was able to determine by examining the properties of the attached document that the document was authored and created by Plaintiff on 7-20-12 at 12:12:24 am and the emails were sent out at around 1:37 a.m.

B.  Finally, Investigators were able to determine that the document authored by Plaintiff was created at 12:12:24 am and the email was sent at 1:37 am.  Because of the late hours and the document being created in the middle of the night, it is reasonable to believe that the documents were created at Plaintiff's residence, located at 18627 Snowden, Detroit, MI.

Dkt. No. 129, Ex. 9 at 3-4.  Plaintiff states that Todd: (a) knew what Liczbinski said but did not put in the affidavit what Liczbinski said, instead putting in details Liczbinski said were "inaccurate," and (b) wrote 1:37 a.m. instead of 1:37 p.m., as the email in Todd's possession stated.  Plaintiff argues that, without the three sentences identified immediately above, no probable cause exists for a search warrant at Plaintiff's home.

In response, Todd stated that he recalled being told by Liczbinski that Plaintiff "could have" created the document because her name was in the document properties. Dkt. No. 120, Ex. 1 at 81-82.  Todd states that it is undisputed that Plaintiff's name appears as the author in the PACER document as the person who was searching the U.S. District Court records regarding Eric Smith. Dkt. No. 120, Ex. 7.  Todd contends that he made the reasonable inference that the author of the PACER document contained the name of the actual author, especially as it was an unusual name and the name of a person recently terminated by Wayne County. Dkt. No. 120, Ex 1 at 285.

20

Plaintiff also argues that the Court should remove from the search warrant affidavit Todd's two-paragraph representation regarding Plaintiff's prior emails to Department Captain Bulifant in May 2012. Plaintiff contends that Todd fabricated the statement that Plaintiff's emails to Captain Bulifant in May 2012 had a "theme that was consistent with the Smith email and its attachment." Dkt. 129, PgID 3696 and Ex. 9 at 4. Plaintiff asserts there was no common theme because the emails to Captain Bulifant were attempts to get her property back from Wayne County. Defendants argue that Plaintiff misses the point regarding the common theme between the Smith email and previous emails sent by Plaintiff to the Department (Internal Affairs). Defendants state that the common theme is that all of the communications express disdain for various members of the Department's executive staff, including Eric Smith, and corruption in the Department.

The Court agrees with Plaintiff. Todd's representation of a common theme may constitute a deliberate falsehood or fabrication. If Todd did fabricate probable cause in the affidavit to support the search warrant, there would be a constitutional violation of Plaintiff's rights that was clearly established at the time of the violation. *See, e.g., Sykes*, 625 F.3d at 312; U.S. Constitution, Fourth Amendment.

Plaintiff also contends the officers were prosecutor shopping because they went to Hathaway after the first prosecutor would not execute the search warrant for them.

The evidence reflects that two prosecutors who typically review search warrants had conflicts of interest (personal acquaintances of persons in or subjects of the investigation). The first prosecutor who actually reviewed the search warrant has stated that he was "on the fence" about whether to sign it, though he looked at it from the perspective of whether he could prevail on a "beyond a reasonable doubt" standard, not a probable cause standard–and advised that the officers could appeal to another prosecutor, which the officers did.

Finally, Plaintiff contends that Todd, Richardson, and Napoleon had exculpatory evidence at their disposal when preparing the affidavit. Plaintiff contends that they were aware: (1) of the communications between Napoleon and Michael Bowles that caused them to understand that Plaintiff was not the person threatening Napoleon; (2) that Michael Bowles was the source of the Eric Smith email; and (3) that ICU investigators did not know the author of the email attachment or determined the computer on which it was generated.  Plaintiff asserts that all of this information should have been included in the affidavit and that, if it had been (and the false statements were omitted), a question of fact would exist as to whether the Defendants had probable cause to search Plaintiff's house. Citing *Gregory v. City of Louisville*, 444 F.3d 725, 743 (6th Cir. 2006) ("in a §1983 action, the existence of probable cause is a question of fact.").

Todd argues that it is undisputed that the PACER document was created and authored on July 20, 2012 at 12:12:24 a.m., which is the middle of the night and means it is most likely that the person was at home when drafting it. Todd argues that the indication that it was attached to an email sent at 1:37 a.m. was not deliberate. At his deposition, Todd testified that there were two emails sent, one at 1:37 a.m. and one at 1:37 p.m. The Court notes that neither Todd nor any other Defendant has supplied the Court with an email that was sent at 1:37 p.m.

Todd further argues that the presence of Plaintiff's name on the PACER document and her prior, recent criticism of members of the Department establishes probable cause that Plaintiff was participating in, or her email was being used to, transmit threatening emails. Todd contends that the supporting probable cause affidavit had the indicia of reliability for law enforcement and a judicial officer to reasonably believe there was probable cause. Todd notes that, at the time, he was aware that a computer was being used to threaten executives of the Department. Todd bases his argument on the threats being made against Napoleon in the form of emails and texts, so when Liczbinski said there was an email with an attachment of a PACER document with Plaintiff's name on it, Dkt. No. 120, Ex. 6 at 30-31, it made Plaintiff a suspect, particularly as she had previously worked for the Department and made threats against members of the department. Based on learning from Liczbinski that

the PACER document was created on a computer Plaintiff used, Docket No. 120, Ex. 6 at 51, and the 12:12:24 a.m. creation time, Todd asserts that he believed it was created at Plaintiff's home.

Todd argues that, even if there was someone else that was the source of the earlier threats against Napoleon, it does not vitiate the fact that Plaintiff could have been involved or that her computer was used to facilitate the threats. Todd also notes that, even without the information Plaintiff wanted deleted, Hathaway stated that Plaintiff was the first person who he would attribute the PACER document to because her name was on it, she was a former employee of Wayne County who had recently been fired, and she had previously written letters denigrating Eric Smith and members of the Department.

Todd concludes that there is no evidence in the record to show that he made any statements or omissions knowingly and intelligently – or with reckless disregard for the truth – such that the search warrant should be invalidated. Relying on *Peet v. City of Detroit*, 502 F.3d 557, 570 n.2 (6th Cir. 2007) (a plaintiff must establish that the officer "with[held] a fact that any reasonable person would have known . . . [such that it] is the kind of thing the judge would wish to know."). Todd believes that, based on a totality of the circumstances, including that Liczbinski said Plaintiff "could have created the document," the affidavit (even redacted) establishes a "fair probability"

24

that evidence connecting the defamatory emails would be found at Plaintiff's home. The Court disagrees. There is a genuine dispute of material fact such that summary judgment cannot be granted.

    b.    *State Law Claims*

    Todd argues that Plaintiff's state law claims of intentional infliction of emotional distress and gross negligence must be dismissed because he has governmental immunity and because Plaintiff cannot prove the elements of the claims. A governmental employee is immune from liability for intentional torts if the act was taken in the course of employment, the employee was acting in good faith, and the act was discretionary (rather than ministerial). *Odom v. Wayne Cty.*, 482 Mich. 459, 473-76 (2008). Good faith is absent if the employee acts maliciously or with a wanton disregard for the rights of others. *Id.* at 474. On a substantive basis, a claim for intentional infliction of emotional distress requires that "a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hilden v. Hurley Med. Ctr.*, 831 F.Supp.2d 1024, 1046 (E.D. Mich. 2011). Todd contends there is no evidence he was acting with anything other than good faith. There is no evidence to support a finding of "extreme or outrageous" conduct by Todd.

    As to gross negligence, a plaintiff must show that a defendant engaged in

25

"conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. 691.1407(7)(a). Todd asserts that Plaintiff cannot prevail simply by arguing or showing he should have "done more" or "taken additional precautions." *Tarlea v. Crabtree*, 263 Mich.App. 80, 90 (2004) (employee is not required "to exhaust every conceivable precaution to be considered not negligent"). Todd suggests there is no evidence to show that he was driven by malice or ill will at any time relative to obtaining, preparing, or executing the search warrant; rather, he contends he was simply performing his duties in a professional manner.

For the reasons set forth in Section III.D.3.a., the Court concludes that Plaintiff has established a genuine dispute of material fact with respect the state law claims and denies Todd's motion for summary judgment with respect to the state law claims against him.

4.    *Richardson*

a.    *Section 1983 Claims*

Richardson argues that, where police have conducted a search pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or "objective good faith." *Leon*, 468 U.S. 922–923. Although a magistrate's approval does not automatically render an officer's conduct reasonable, the Supreme Court in *Messerschmidt v.*

26

*Millender* clarified that the approval by a magistrate or review by others is relevant in determining the objective reasonableness of the officers' determinations. 132 S.Ct. 1235, 1245 (2012).

The Supreme Court emphasized that "[t]he threshold for establishing [an exception to the shield of immunity] is a high one, and it should be" because magistrates are presumed to understand probable cause moreso than the police. *Messerschmidt,* 132 S.Ct. 1245. And, the fact that the officers secured judicial approval is ordinarily pertinent in assessing whether they could have held a reasonable belief that the warrant was supported by probable cause. *Messerschmidt,* 132 S.Ct. at 1249-50. Richardson later contends that Plaintiff can overcome the shield of immunity only by showing that "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unbelievable. *Leon*, 468 U.S. at 923. Richardson's argument seems to miss the mark, as Plaintiff is focused more on Todd's misstatements and omissions, which the Court finds relevant when analyzing Richardson's motion.

Richardson argues that Plaintiff is pitting the conclusions of Todd against the testimony of Liczbinski to prove falsity. Richardson argues that Liczbinski's testimony does not establish anyone deliberately included false information. While Richardson's argument may be correct (because multiple interpretations are possible).

27

Richardson ignores that Todd states in the affidavit that "<u>Liczbinski was able to</u> <u>determine</u> by examining the properties of the attached document that the document was authored and created by Plaintiff on 7-20-12 . . ." There is no evidence that Liczbinski ever made such a determination or told Todd that he did. As discussed above, the Court finds that there is a question of fact whether Todd misled the magistrate judge by failing to include or disclose that "Michael Bowles" had sent threatening text messages to Napoleon or the Department.

In the Sixth Circuit, police need not include "information potentially contradicting a finding of probable cause" in a search warrant. *See Mays v. City of Dayton*, 134 F.3d 809, 815-16 (6th Cir. 1998) ("the warrant application process results in no ultimate finding of guilt or innocence and thus its consequences of arrest are less severe than the consequences of an adverse criminal verdict"). Discovery has revealed that Plaintiff did interact with Bowles regarding communications to Napoleon demanding that Eric Smith be terminated.

Richardson also asserts that probable cause existed even without the alleged deliberately misleading actions by Todd. Richardson contends the affidavit still would have stated:

> (1)    On July 20, 2012, the Sheriff and several members of his executive staff received an untraceable email from "Tom Truth" accusing Executive Chief Eric Smith of having a federal cocaine charge;

28

(2)    The otherwise untraceable email came with an attached PDF of a PACER docket purporting to show Eric Smith's criminal case;

(3)    An examination of the PDF properties listed Plaintiff as "author."

(4)    Plaintiff was known to investigators as a former appointee of Napoleon who had recently been terminated for misconduct;

(5)    The language in the Tom Truth email was consistent with previous writings from Plaintiff while she was suspended and following her termination;

(6)    ICU investigators concluded that the PDF was either authored on a computer owned by Plaintiff or on a computer with software registered to Plaintiff;

(7)    Because the PDF was created late at night (12:12:24 am) on 7/20/2012, it was reasonable to believe that Plaintiff created the PDF on a computer at her home.

Richardson asserts that those facts are sufficient to show that there was probable cause to believe that Plaintiff was involved (either directly or as an accomplice) in sending the Tom Truth email, and that it was reasonable to conclude that evidence of her involvement would be found in her home.[1]  Richardson also argues that Plaintiff has failed to adequately allege any of her Section 1983 claims and, even if she did, they fail as a matter of law.

The Court finds that there is a genuine dispute of material fact that Richardson

_____

[1]Richardson argues that there is no evidence to support an assertion that he or Todd intentionally engaged in deliberate falsehoods or acted in careless disregard for the truth when they drafted the affidavit and prepared the warrant.

29

did not have reason to believe there was probable cause when he reviewed and approved the search warrant application prepared by Todd. Richardson controlled the investigation into who was responsible for the Tom_Truth emails sent to Napoleon. Richardson received and reviewed reports and directed activities regarding the investigation, all of which he insisted be kept confidential. Richardson knew about the extensive communications between Napoleon and Michael Bowles before the search warrant was obtained and, in a light most favorable to Plaintiff, Richardson knew that it was not Plaintiff who was threatening Napoleon. Dkt. No. 129, Ex. 1 at 35, 126; Ex. 12 at 91-93. Prior to seeing the search warrant, Richardson was advised by Liczbinski that Liczbinski could not determine that Plaintiff was the author of the email. Nonetheless, Richardson approved – and did not correct the erroneous statements in – the search warrant application that represented that there was "probable cause to believe that Renee Newell fraudulently converted, transmitted, and/or created and authored a fictitious email address and attached documents . . ." And, when Todd's attempt to have a Wayne County prosecutor sign the warrant request, Richardson went to Hathaway to obtain authorization for the warrant.

The Court concludes that Richardson's motion for summary judgment on Plaintiff's Section 1983 claim must be denied.

b.    *State Law Claims*

Richardson's arguments for dismissal of Plaintiff's intentional infliction of emotional distress and gross negligence claims mirror those set forth by Todd above. For the reasons set forth in Section III.D.4.a., the Court concludes that Plaintiff has established a genuine dispute of material fact with respect the state law claims and denies Richardson's motion for summary judgment with respect to the state law claims against him.

     *5.*    *Conclusion*

For the reasons stated above, the Court: (1) grants the motions filed by Napoleon and Wayne County, Chahine and Johnson, and Farris, and they are dismissed; and (2) denies the motions filed by Todd and Richardson.

## IV.   CONCLUSION

Accordingly,

IT IS ORDERED that Todd's Motion for Summary Judgment [Dkt. No. 120] is **DENIED**.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Napoleon and Wayne County [Dkt. No. 121] is **GRANTED**.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Chahine and Johnson [Dkt. No. 122] is **GRANTED**.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by

Farris [Dkt. No. 123] is **GRANTED**.

IT IS FURTHER ORDERED that the Motion for Summary Judgment [Dkt. No. 124] filed by Richardson is **DENIED**.

IT IS FURTHER ORDERED that the Motion for Order Regarding Exhibit 7 to Docket Number 131 filed by Napoleon, Richardson and Wayne County [Dkt. No. 138] is **DENIED**.

IT IS SO ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  March 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager